IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 26-cv-00591-CNS-CYC

RYAN RUIS, and
ALLISON RUIJS,

Plaintiffs,

v.

TOWN OF SILVERTON, COLORADO,
BEVAN HARRIS, in his individual capacity,
GLORIA KAASCH-BUERGER, in her individual capacity, and
DAYNA KRANKER, in her individual capacity,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Even wrong decisions by a municipality's officials do not necessarily rise to constitutional violations. Plaintiffs Ryan Ruis and Allison Ruijs assert that defendant Town of Silverton and three of its officials — Building Official Bevan Harris, Town Administrator Gloria Kaasch-Buerger, and Mayor Dayna Kranker (the "Individual Defendants") — violated the Constitution when they pursued demolition of their property after fire damaged it. But much of their complaint is that the Town's public-safety rationale for doing so was incorrect. That does not suffice to undergird most of their constitutional claims. The one exception is their claim that the Town violated procedural due process by engaging in the pursuit of demolition without a hearing first. Accordingly, the Court **RECOMMENDS** that the defendants' motion to dismiss, ECF No. 37, be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

According to the Second Amended Complaint ("SAC"), ECF No. 34, whose factual allegations the Court accepts as true for purposes of this motion, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), on October 5, 2022, a fire damaged the plaintiffs' property in Silverton, Colorado (the "Property"), where they had lived and operated a restaurant. ECF No. 34 ¶¶ 1, 3, 45, 47–49. After the fire, the plaintiffs moved out, intending to repair the Property. *Id.* ¶¶ 51–52. They never came back. *Id.* ¶ 53.

This, they say, was the defendants' fault. Eight days after the fire, Harris restricted access to portions of the Property and conditioned future re-occupancy on certain requirements. *Id.* ¶ 54. These included a structural engineering review and demolition-related work; later, he imposed additional conditions relating to occupancy, reconstruction, and inspections. *Id.* ¶¶ 61–62. Harris imposed more restrictions and requirements during the first half of 2023, *see id.* ¶ 71, 72, 74–75, none of which defined a clear permitting process or path by which reconstruction of the Property could be approved. *Id.* ¶ 77.

In the meantime, Harris told Town officials to begin preparing for abatement and condemnation of the Property. *Id.* ¶ 63. By June 2023, Harris sought Town officials' approval for "eviction and condemnation leading to demolition" of the Property, citing the plaintiffs' lack of intent to renovate. *Id.* ¶¶ 81–82. Two months later, Harris repeated this recommendation, framing the choice as one between bringing the Property into code quickly or demolition. *Id.* ¶¶ 88–89. Kaasch-Buerger indicated that Town counsel would assist Harris in the process. *Id.* ¶ 90. Harris then formally declared to Town officials that the Property was a dangerous structure and requested a Notice to Abate, though no Notice to Abate came from this. *Id.* ¶¶ 91–92.

Instead, that day, Kaasch-Buerger communicated a "plan of action" regarding abatement and the Property's possible purchase. *Id.* ¶¶ 95–96. That was part of many Town discussions about the property: between August 2023 and February 2026, the Town — including Kaasch-Buerger and Kranker, then a Trustee and later Mayor — held at least eight closed executive sessions concerning the Property. *Id.* ¶¶ 103–07. But Kaasch-Buerger's plan never came to fruition: the Town lacked sufficient capital to purchase the Property. *See id.* ¶¶ 99–100.

In October 2023, Harris's original plan moved forward: he issued a Notice to Vacate directing the plaintiffs and all occupants to surrender possession of the Property within eleven days. *Id.* ¶¶ 116–17. Three weeks later, he issued an additional notice ordering removal of belongings, stating that the time to abate had passed and that the Town now had to demolish the structure at the plaintiffs' expense. *Id.* ¶¶ 118–20. After receiving the latter notice, Ruis contacted Kaasch-Buerger seeking to appeal it, but Kaasch-Buerger told him that the Town was "way past that." *Id.* ¶¶ 122–23.

The plaintiffs therefore sought emergency injunctive relief in state court to prevent demolition of the Property. *Id.* ¶¶ 19, 128. They succeeded: in December 2023, the state court entered a temporary restraining order prohibiting the Town from dispossessing the plaintiffs or entering the Property to demolish or prepare for demolition pending further order. *Id.* ¶¶ 20, 129. It later required the Town to schedule a public hearing or appeal before demolition could proceed. *Id.* ¶ 135.

After that ruling, Harris issued a notice scheduling a public hearing on demolition of the Property. *Id.* ¶ 139. The hearing took place on August 12, 2024, with Kranker presiding. *Id.* ¶¶ 143–44. The Town upheld Mr. Harris's demolition determination and, on August 22, Kranker issued written findings supporting that decision. *Id.* ¶¶ 149–51.

Ultimately, after making mortgage payments for some thirty-one months after the fire, the plaintiffs lost the Property through foreclosure. *Id.* ¶¶ 161, 179–80. The Town vacated its decision to demolish the Property once it became aware that foreclosure was imminent. *Id.* ¶¶ 30–31, 168, 171–73. The building apparently still stands. *Id.* ¶¶ 169–70.

The plaintiffs commenced this action pro se on February 13, 2026. ECF No. 1. After amending their complaint once, ECF Nos. 15, 16, 17, they filed the operative SAC on May 14, 2026, ECF No. 34. The SAC asserts five claims, all under 42 U.S.C. § 1983. It asserts the first four against the Individual Defendants: (1) procedural due process violations, *id.* ¶¶ 183–98; (2) substantive due process violations, *id.* ¶¶ 199–212; (3) taking without just compensation, *id.* ¶¶ 213–22; and (4) First Amendment retaliation, *id.* ¶¶ 223–33. Count V asserts that the Town is liable under all of those theories. *Id.* ¶¶ 234–249.

This motion followed, and the district judge referred it to the undersigned. ECF No. 38.

## ANALYSIS

The defendants contend that the SAC fails to state a claim. ECF No. 37 at 2. A party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Legal conclusions are not entitled to the assumption of truth, *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011), and "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Each claim arises under 42 U.S.C. § 1983, which makes "liable to the party injured" any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The Individual Defendants assert qualified immunity against such liability. The Town asserts that the SAC does not plausibly allege a claim for relief against it.

## I. Individual Defendants.

The Individual Defendants, sued in their individual capacities, ECF No. 34 ¶¶ 42–44, each asserts qualified immunity. ECF No. 37 at 2. Qualified immunity shields a government official from liability for damages when the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Raising the defense in a Rule 12(b)(6) motion "subjects the defendant to a more challenging standard of review than would apply on summary judgment," under which the court analyzes "the defendant's conduct *as alleged in the complaint*." *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)). Asserting the defense "creates a presumption that the defendant is immune from suit." *Id.* (quoting *Est. of Smart by Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020)). To overcome that presumption, a plaintiff must show that (1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's conduct. *Id.* (citing *Thomas*, 765 F.3d at 1194). A court may consider those two

prongs in any order, *see Burke v. Pitts*, 157 F.4th 1326, 1337 (10th Cir. 2025), and a plaintiff's failure to satisfy either one will result in dismissal. *See Brown v. City of Tulsa*, 124 F.4th 1251, 1265 (10th Cir. 2025).

As to the latter prong, a right is clearly established when an on-point Supreme Court or Tenth Circuit decision exists or when "the clearly established weight of authority from other courts" shows the right to be as the plaintiff maintains. *Truman*, 1 F.4th at 1235 (quoting *Thomas*, 765 F.3d at 1194). The right "must be defined with specificity." *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (per curiam), and "particularized" to the facts of the case. *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While a plaintiff need not identify a case with identical facts, he must identify pre-existing law giving a defendant "fair warning" of the illegality of the defendant's conduct. *Novitsky v. City of Aurora*, 491 F.3d 1244, 1255–56 (10th Cir. 2007) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). The plaintiffs have not done so here.

**A. Procedural Due Process (Count I).**

Count I, for instance, alleges that the Individual Defendants deprived the plaintiffs of protected interests in the Property without constitutionally adequate notice and a meaningful opportunity to be heard. ECF No. 34 ¶¶ 184–96.

The Fourteenth Amendment's Due Process Clause provides that no state "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To assess a procedural due process claim, courts ask: "(1) Did the individual possess a protected property interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006) (quoting *Clark v. City of Draper*, 168 F.3d 1185, 1189 (10th Cir.1999)). "[O]rdinarily one who has a protected property interest is entitled to some sort of

hearing before the government acts to impair that interest . . . .” *Id.* at 1220 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Here, no clearly-established law put the Individual Defendants on notice that they violated the Due Process Clause. Kranker voted to enter, and took part in, executive sessions concerning the Property; presided over a public appeal hearing that a state court required in which the plaintiffs bore the burden of overcoming a presumption that Harris’s decision to demolish was correct; and signed written findings affirming that determination. Kaasch-Buerger took part in internal communications and executive sessions about abatement, title, liens, and possible acquisition of a property, and told Ruis that the Town was past an appeal of the demolition decision. Harris restricted access and conditioned re-occupancy of the Property pending repairs; issued a notice to vacate and a notice that the Town would demolish the structure before any public hearing; and, after the Town upheld the demolition determination following a hearing, issued a notice scheduling demolition while state-court review was pending. To meet their burden, the plaintiffs “must identify a case where the government defendant acting under similar circumstances was held to have committed a constitutional violation.” *Stepp v. Lockhart*, 168 F.4th 1286, 1315 (10th Cir. 2026) (citing *Heard v. Dulayev*, 29 F.4th 1195, 1203 (10th Cir. 2022)). They identify none, and the Court is aware of none.

Instead, the plaintiffs recite a general description of procedural due process. *See* ECF No. 45 at 6. That will not do. The Supreme Court has repeatedly rejected such high-level statements as giving insufficient notice to overcome qualified immunity. *See White*, 580 U.S. at 79; *Emmons*, 586 U.S. at 43. And while a court must construe pro se filings “liberally” and hold them “to a less stringent standard than formal pleadings drafted by lawyers,” *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)), a

court cannot "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)). Even construing the plaintiffs' filings liberally, the Court cannot find authority clearly proscribing the Individual Defendants' conduct to defeat qualified immunity.

The closest the plaintiffs come is their allegations against Harris. After all, it may be plausible that depriving them of their ability to occupy the property without a hearing violates Due Process. *See infra* Section II.A. But there are exceptions to the general rule that a hearing must precede deprivation of a protected property interest. "[D]ue process is flexible and calls [only] for such procedural protections as the particular situation demands," and "[w]here . . . the state must act quickly, a meaningful postdeprivation hearing is adequate." *Camuglia*, 448 F.3d at 1220 (second and third alterations in original) (first quoting *Mathews*, 424 U.S. at 334; then quoting *Clark*, 168 F.3d at 1189). "In matters of public health and safety, the Supreme Court has long recognized that the government must act quickly." *Id.* "The process one is due is not dependent on whether the government was right or wrong in the particular case but on whether, in general, constitutional norms require particular procedures to balance private and public interests." *Id.* at 1222. The plaintiff cites no case clearly indicating that those norms required a hearing before Harris's actions in this case. Thus, no existing precedent placed the answer to that question "beyond debate," *see White*, 580 U.S. at 79 (quoting *Mullenix*, 577 U.S. at 12), and the Individual Defendants are therefore entitled to qualified immunity on Count I.

**B. Substantive Due Process (Count II).**

Count II alleges a violation of substantive due process. Such claims "find their basis in the Fourteenth Amendment's protections against arbitrary government power." *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019) (citing *Browder v. City of Albuquerque*, 787 F.3d 1076,

1078–80 (10th Cir. 2015)). They take two forms: (1) claims that the government has infringed a fundamental right; and (2) claims that government action deprived a person of life, liberty, or property "in a manner so arbitrary it shocks the judicial conscience." *Stepp*, 168 F.4th at 1313 (citations omitted). Courts "apply the fundamental-rights approach when the plaintiff challenges *legislative action*, and the shocks-the-conscience approach when the plaintiff seeks relief for tortious *executive action*." *Id.* (quoting *Halley v. Huckaby*, 902 F.3d 1136, 1153 (10th Cir. 2018)). Count II is of the latter variety.

That entails an exacting standard. "An arbitrary deprivation of an individual's property right can violate the substantive component of the Due Process Clause," *Camuglia*, 448 F.3d at 1222 (quoting *Clark*, 168 F.3d at 1190), but "the arbitrariness must be extreme," *id.* "Even the actions of a reckless official or one bent on injuring a person do not necessarily shock the conscience." *Stepp*, 168 F.4th at 1313 (citing *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006)). The plaintiff "must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression," and "[t]he behavior complained of must be egregious and outrageous." *Id.* at 1314 (quoting *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013)).

The SAC alleges no such behavior. With respect to Kranker, her participation in executive sessions, presiding over the August 12, 2024 hearing, and ratification of Harris's determination at that hearing, even read liberally, does not rise to outrageousness. The SAC does not allege that Kranker abused her authority in executive sessions — it does not describe what she did there at all. As to the hearing, although the plaintiffs object that it improperly allocated burdens of proof and was substantively incorrect, ECF No. 34 ¶ 207–08; *see id.* ¶¶ 145–46, the former objection relates to procedural, not substantive due process. And the latter does not

describe the "degree of outrageousness" the standard demands. *Lindsey*, 918 F.3d at 1116 (quoting *Onyx Props., LLC v. Bd. of Cty. Commr's*, 838 F.3d 1039, 1048–49 (10th Cir. 2016)). After all, the Due Process Clause "is not a guarantee against incorrect or ill-advised government decisions." *Camuglia*, 448 F.3d at 1222 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). The SAC therefore pleads no violation of substantive due process against Kranker.

Nor does it against Kaasch-Buerger. The routine administrative work she performed — relaying that Town counsel would assist Mr. Harris, listing action items concerning abatement, a second engineering opinion, title, liens, valuation, and abatement costs, reporting an offer concerning the deed of trust, and participating in executive sessions — is never alleged to have comprised an abuse of her authority. And simply remarking once that the Town was "way past" an appeal on demolition falls short even of the "flagrant misconduct" that has itself fallen short of the shocks-the-conscience standard. *See Stepp*, 168 F.4th at 1315 (quoting *Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1258 (10th Cir. 1996)). Although the plaintiffs' motion response also describes additional communications from August 29, 2023, ECF No. 45 at 12, the SAC does not contain those allegations, and a plaintiff "cannot amend her complaint by adding factual allegations in response to Defendant's motion to dismiss." *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (first citing *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995); then citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); and then citing *Wilson v. Jenks*, No. 12-CV-02495-RM-KMT, 2014 WL 6515336, at *4 (D. Colo. Nov. 20, 2014)). The SAC does not plausibly allege that Ms. Kaasch-Buerger violated substantive due process.

It does not do so against Harris either. It alleges that he engaged in condemnation and demolition efforts without an engineering recommendation for complete demolition; that he

imposed shifting requirements without a clear path to compliance; and that he issued demolition-related notices before any hearing and during judicial review. ECF No. 34 ¶¶ 201–04. It also alleges that, in June 2023, he speculated about the reasons for a discrepancy in the plaintiffs' names and circulated criminal allegations concerning Ruijs that had no connection to structural safety. *Id.* ¶¶ 83–85. Even reading these allegations liberally, they do not meet the shocks-the-conscience standard. They suggest, perhaps, an over-zealous pursuit of demolition. But the Due Process Clause "is not a guarantee against incorrect or ill-advised [government] decisions," *Camuglia*, 448 F.3d at 1222 (alteration in original) (quoting *Camuglia v. City of Albuquerque*, 375 F. Supp. 2d 1299, 1309 (D.N.M. 2005)). And the SAC does not suggest that anything significant came of Harris's personal speculation about the plaintiffs. In short, the SAC does not describe a building official who "arbitrarily abused his authority or employed it as an instrument of oppression." *Stepp*, 168 F.4th at 1314 (quoting *Hernandez*, 734 F.3d at 1261).

Count II should therefore be dismissed.

### C. Takings Clause (Count III).

Count III asserts that the Town, through the Individual Defendants, engaged in an unconstitutional taking without compensation. *See* ECF No. 34 ¶¶ 215–17. The parties brief it as a claim against each Individual Defendant in their individual capacity. *See* ECF No. 37 at 6, 8, 11; ECF No. 45 at 10–11. But there is no clearly established law that would make them so liable.

The Fifth Amendment provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. But "although it is clearly established that a *governmental* taking is [a] constitutional violation, whether a state actor, *as an individual*, can appropriate property under the Takings clause, is a distinct question that remains unanswered." *Knellinger v. Young*, Civil Action No. 1:22-cv-01379-CNS-STV, 2026 WL 411749, at *11. Thus, "individual liability for takings claims is not 'clearly established.'" *O'Connor v. Eubanks*,

83 F.4th 1018, 1022 (6th Cir. 2023) (quoting *Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 468 (6th Cir. 2023)). That entitles the Individual Defendants to qualified immunity on Count III.

**D. First Amendment Retaliation (Count IV).**

Count IV alleges First Amendment retaliation. ECF No. 34 ¶¶ 223–33. The First Amendment prohibits the making of a law "abridging the freedom of speech." U.S. Const. amend. I. When, as here, the defendant is not the plaintiff's employer, a First Amendment retaliation claim requires a plaintiff to plead (1) "that the plaintiff 'was engaged in constitutionally protected activity'"; (2) "that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'"; and (3) "that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quoting *Lackey v. Cnty. of Bernalillo*, No. 97-2265, 1999 WL 2461, at *3 (10th Cir. Jan. 5, 1999)). The plaintiffs cite no First Amendment authority at all, let alone authority showing that the Individual Defendants violated clearly established law.

For aught that appears, none exists. The Court is unaware of any authority indicating, for instance, that Kranker's presiding over the August 2024 hearing would establish a claim for First Amendment retaliation. The plaintiffs point to no authority covering facts akin to Kaasch-Buerger's telling Ruis that the town was "way past" an appeal. And the Court is further unaware of any authority holding that Harris's continued enforcement of a demolition determination for a fire-damaged building constituted First Amendment retaliation. Indeed, Harris recommended condemnation and demolition repeatedly, ECF No. 34 ¶¶ 63, 81–82, 88–89, 91, long before the November 2023 protective activity alleged, *id.* ¶¶ 109, 116–20, belying an inference of retaliatory motive. Nor does any of this conduct have such an inherently retaliatory character such that the unconstitutional motive would be apparent to every reasonable official. *See Kisela*

*v. Hughes*, 584 U.S. 100, 104–06 (2018) (per curiam). In short, the plaintiffs have not shown that any Individual Defendants' conduct violated clearly established First Amendment law, entitling them to qualified immunity as to Count IV.

**II. Liability for the Town.**

Count V pleads the Town's liability. ECF. No. 34 ¶¶ 234–49. A claim against a municipality based on its employees' conduct requires two things: (1) an employee committed a constitutional violation, and (2) a municipal policy or custom was the moving force behind it. *See Lindsey*, 918 F.3d at 1116–17 (citing *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1264 (10th Cir. 2008)). A municipality may be liable even when its officer is immune, *see Camuglia*, 448 F.3d at 1223 (quoting *Watson v. City of Kansas City*, 857 F.2d 690, 697 (10th Cir. 1988)), given that the Town cannot invoke qualified immunity. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980). The Town addresses Count V as reiterating the theories of liability in Counts I to IV against it, ECF No. 37 at 11–14; the Court does as well.

**A. Procedural Due Process (Count I).**

The Town challenges the plaintiffs' procedural due process claim. *Id.* at 11–12. A court evaluating such a claim asks whether the plaintiffs had a protected interest and, if so, whether the process the defendant provided regarding the deprivation was adequate. *See Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990). There is no dispute as to the plaintiffs' possession of a protected interest, as they had one in their ownership of the Property. And it is simple to conclude that the plaintiffs were deprived of that interest: "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection," *Connecticut v. Doehr*, 501 U.S. 1, 12 (1991), such as the loss of the rights of occupancy and of unrestricted use and enjoyment. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 54 (1993). Here, the SAC alleges that the Town restricted their access to and

occupancy of the Property, ordered them to surrender possession by October 15, 2023, and ordered them to remove their belongings by November 20, 2023. ECF No. 34 ¶¶ 54–56, 116–20. At the very least, the 2023 notices ordering the plaintiffs to remove their belongings and announcing that the Town was "required to demolish" the Property, *id.* ¶¶ 118–20, plausibly describe an impairment of the plaintiffs' possessory and use rights, which is enough at this stage.

The main dispute on this claim centers on whether the SAC adequately alleges that process involved in the deprivation of those rights was sufficient. A procedural due process violation "is not complete unless and until the State fails to provide due process." *Zinermon*, 494 U.S. at 126. The "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). What process is due depends on three factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation through the procedures used, and the probable value of additional or substitute safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens of additional procedures. *Id.* at 334–35 (citing *Goldberg v. Kelly*, 397 U.S. 254. 263–71 (1970)). Timing matters: the "root requirement" of the Due Process Clause is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). Exceptions are limited to "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *James Daniel Good*, 510 U.S. at 53 (quoting *Fuentes v. Shevin*, 407 U.S. 65, 82 (1972)). Whether an exception applies depends on "the competing interests at stake, along with the promptness and adequacy of later proceedings." *Id.*

The *Mathews* factors, applied to these allegations, show that the plaintiffs' claim is plausible.

First, the Town concedes that plaintiffs' private interest is substantial. ECF No. 37 at 12.

Second, the plaintiffs allege facts suggesting a meaningful risk of error and a meaningful value in prior process. No engineer recommended demolition of the entire building. Town counsel advised that the Town serve a notice and allow time to cure, but the plaintiffs allege that no Notice to Abate was ever served. ECF No. 34 ¶¶ 64, 92. And the Town announced that demolition was "required" before any hearing took place. *Id.* ¶ 120. Disputes over whether a building can be repaired do not necessarily lend themselves to the kind of reliable, one-sided assessment that can justify postponing a hearing. *Compare Mackey v. Montrym*, 443 U.S. 1, 13, (1979) (explaining that the predicates were "objective facts" readily ascertainable by an impartial official), *with Doehr*, 501 U.S. at 17 (explaining that fact-specific disputes do not lend themselves to accurate ex parte assessment).

Third, the Town's interest in public safety vis-à-vis damaged buildings is real, but no emergency required it to act before holding a hearing. Indeed, the SAC alleges that the building has stood for years since the fire. ECF No. 34 ¶¶ 169–70. Absent "extraordinary situations," the Due Process Clause requires notice and a hearing before the government impairs a property interest like the plaintiffs'. *James Daniel Good*, 510 U.S. at 53 (quoting *Fuentes*, 407 U.S. at 82). Whether such circumstances existed is a question for a later stage.

The Town responds that it "ultimately" held a hearing, of which the plaintiffs had notice and at which they had a chance to respond. ECF No. 37 at 7, 10. But the plaintiffs' theory is that the Town impaired their property interest first and held the hearing later. The availability of a full post-termination hearing does not necessarily replace the requirement of pre-termination

notice and an opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 545–46 (1985).

Count I should therefore proceed against the Town.

**B. Substantive Due Process Claim (Count II).**

The Town argues for dismissal of the plaintiffs' substantive due process claim. ECF No. 37 at 12–13. As set out above, *see* Section I.B, the shocks-the-conscience standard applies to the claim, as a municipal demolition decision is executive action. *See Hutchins v. Bd. of Cnty. Comm'rs.*, Civil Action No. 23-cv-01819-PAB-JPO, 2024 WL 4333659, at *11 n.15 (D. Colo. Sept. 27, 2024) (citing *Bruce v. Ogden City Corp.*, No. 22-4114, 2023 WL 8300363, at *15 (10th Cir. Dec. 1, 2023)). As concluded above, the SAC does not plausibly allege conscience-shocking conduct by any of the three Individual Defendants. Because no underlying violation is plausibly alleged, the Town cannot be liable for its officers' conduct.

The plaintiffs also allege, however, that the Town itself acted as an entity by ratifying Harris's demolition determination after the August 12, 2024 hearing. But that decision, as alleged, did not violate substantive due process. Given the lack of an engineering recommendation for complete demolition and the Property's standing for years after the fire, it may be that Board's decision was wrong. But a wrong decision is not necessarily a conscience-shocking one. *Camuglia*, 448 F.3d at 1222. Indeed, allegations that a county demolished a bridge that "was highly repairable" and posed no "imminent danger," did not show that the county acted "egregiously or outrageously." *Hutchins*, 2024 WL 4333659, at *12. After all, a city's "routine exercise of the police power, even if a challenged exercise of the police power, does not implicate the kind of conscience-shocking government acts that substantive due process prevents." *McIntosh v. City of Madisonville*, 126 F.4th 1141, 1149 (6th Cir. 2025). To the extent the complaint is about the burdens allocated at the hearing, a "dispute over the exercise of an

accepted police power does not create a substantive due process problem, as opposed to the possibility of a procedural due process defect." *Id.* And while the Town later vacated its demolition determination after foreclosure proceedings were in place, that action is not itself an abuse of authority or outrageous conduct.

To be sure, there is serious harm, and the "magnitude of potential or actual harm" is part of the standard. *Camuglia*, 448 F.3d at 1222 (quoting *Uhlrig v. Harder*, 64 F.3d 567, 574 (10th Cir. 1995)). But serious harm flowing from a decision that may have been mistaken does not itself make the decision outrageous.

The plaintiffs protest. The Town's public-safety justification, they say, raises a factual dispute. ECF No. 45 at 12–13. But the material issue is not the correctness of the public-safety justification; it is that the conduct alleged, as a matter of law, does not shock the conscience. *See Hutchins*, 2024 WL 4333659, at *12–13.

In sum, the plaintiffs do not plausibly allege that the Town, through its officers or through the Board's decision, engaged in conduct that shocks the conscience. Count II should therefore be dismissed as to the Town.

### C. Takings Clause (Count III).

To state a takings claim, a plaintiff must plead that "(1) something was 'taken' by the government; (2) it was 'property'; (3) it was the plaintiff's property; and (4) it was taken 'for public use, without just compensation.'" *Knellinger v. Young*, 134 F.4th 1034, 1043 (10th Cir. 2025). Count III fails on the fourth element.

When the government "acts pursuant to its police power, rather than the power of eminent domain, its actions do not constitute a taking for purposes of the Takings Clause." *Hutchins*, 2024 WL 4333659, at *7 (quoting *Lech v. Jackson*, 791 F. App'x 711, 717 (10th Cir. 2019) (unpublished)). The police power "controls the use of property by the owner for the public

good, authorizing its regulation and destruction without compensation," while eminent domain "takes property for public use and compensation is given for property taken, damaged or destroyed." *Id.* (quoting *City & Cnty. of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759, 766–67 (Colo. 1992)). Here, the SAC itself describes the Town's conduct as enforcement of its dangerous-building rules, an exercise of the police power. *See, e.g.*, ECF No. 34 ¶¶ 54–63. And where a complaint "contains no allegations suggesting that" the municipality "demolished the [property] for 'public use,' rather than to advance 'public health [or] safety,'" no takings claim is alleged. *Hutchins*, 2024 WL 4333659, at *7 (alteration in original) (quoting *Lech*, 791 F. App'x at 718). The SAC at various points speaks of tourism concerns, attention to the Property from the community, a potential purchase by the Town of the Property that never took place, ECF No. 34 ¶¶ 71, 80, 95–96, but none of that indicates that the Town took the property for public use.

The plaintiffs protest that public safety did not actually justify the Town's actions. ECF No. 45 at 12–13. But whether the Town's public-safety rationale was correct is not at issue. A takings claim must allege that the taking was for public use. The SAC does not do that. Count III should therefore be dismissed as to the Town.

**D. First Amendment Retaliation (Count IV).**

To the extent the First Amendment retaliation claim is asserted against the Town, *but see* ECF No. 37 at 14, it lacks facts supporting an inference that the Town acted because of the plaintiffs' protected activity.

To begin, the earliest potential protected activity alleged is either Ruis's call to Kaasch-Buerger asking how to appeal, which came at some point after October 26, 2023 or plaintiffs' seeking injunctive relief in the state court on November 30, 2023. *See* ECF No. 34 ¶ 109. But by that time, Harris had already recommended abatement and condemnation, ECF No. 34 ¶ 63; sought eviction leading to demolition, *id.* ¶ 81; declared the building dangerous, *id.* ¶ 91; issued a

Notice to Vacate, *id.* ¶ 116; and told the plaintiffs that the Town was "now required to demolish the structure," *id.* ¶ 120. None of those activities could have been motivated by retaliatory animus. Some nine months then passed before the Board upheld Mr. Harris's demolition recommendation at a hearing, *id.* ¶ 150, but "unless the [adverse action] is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (citing *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997)) (Americans with Disabilities Act). The SAC does not do so. To be sure, judicial proceedings may still have been pending at that point, *see* ECF No. 34 ¶ 155, but the plaintiffs must allege facts permitting one to think that the actions were caused by their protected activity, not simply the simultaneous existence of a protected activity and some subsequent action.

It is no answer to say, as the plaintiffs do, that the issue cannot be resolved at the pleading stage. ECF No. 45 at 11. A plaintiff must plead facts that make retaliatory motive plausible. The timing alleged here, read together with the rest of the SAC, does not.

Count IV should therefore be dismissed as to the Town.

**III. The dismissals should be without prejudice, except as to the takings claim against the Individual Defendants.**

"A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997)). A court may deny leave to amend for "failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (quoting *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)). But dismissal of a pro se complaint for failure to state a claim

is proper "only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001)).

Amendment would be futile as to Count III against the Individual Defendants, which fails because no clearly established law makes an individual official personally liable under the Takings Clause. That is a question of law, and no additional facts could change the answer. The remainder of the claims depend on the conduct alleged, so amendment is not obviously futile yet. They should therefore be dismissed without prejudice.

Dismissal without prejudice does not itself grant leave to amend. If the plaintiffs believe they can cure the deficiencies identified in this Recommendation, they must move for leave to amend under Federal Rule of Civil Procedure 15(a)(2).

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS**[1] that the defendants' Motion to Dismiss Second Amended Complaint Pursuant to F.R.C.P. 12(b)(6), ECF No. 37, be **DENIED in part** with respect to the procedural due process claim against the Town of Silverton. The

---

[1] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.

Court **RECOMMENDS** that the motion be **GRANTED in part** with respect to all other claims; that the takings claim (Count III) against Harris, Kaasch-Buerger, and Kranker be **DISMISSED with prejudice**; and that all remaining counts be **DISMISSED without prejudice**.

Respectfully submitted this 23rd day of October, 2026, at Denver, Colorado.

BY THE COURT:

________________________________

Cyrus Y. Chung
United States Magistrate Judge